IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

| | |
|---|---|
| ESTES EXPRESS LINES,<br><br>          *Plaintiff,*<br><br>v.<br><br>U.S.A. LAMP AND BALLAST RECYCLING, INC. *doing business as* CLEANLITES RECYCLING, INC.,<br><br>          *Defendant.* | Civil Action No. 2:23-cv-1228<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Before the Court is Defendant U.S.A. Lamp and Ballast Recycling Inc., d/b/a Cleanlites Recycling Inc.'s ("Cleanlites") motion to dismiss ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6). Plaintiff Estes Express Lines ("Estes") filed its complaint ("Complaint") on July 6, 2023, which initiated Estes's second lawsuit against Cleanlites concerning the same underlying circumstances ("*Estes II*"). (ECF No. 1). Estes first asserted claims against Cleanlites in Civil Action No. 2:21-cv-609-WSS ("*Estes I*"). *Estes I* was (and still is) pending before the Court when Estes filed this subsequent action. In its Complaint, Estes alleges Recovery of Response Costs (Count I) and Declaratory Judgment (Count II), both pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). (ECF No. 1, ¶¶ 50-60). Cleanlites now moves to dismiss the Complaint in its entirety for failure to state a claim due to impermissible claim-splitting. (ECF No. 6).

1

I. **FACTUAL BACKGROUND**

The underlying facts of this dispute mirror those alleged in *Estes I*. Both suits arise out of a mercury spill that occurred at Estes's Eighty Four, Pennsylvania terminal (the "Terminal"). In February 2021, Cleanlites hired Estes to transport approximately 18.6 gallons of mercury from Cincinnati, Ohio, to a mercury recovery, recycling, and retirement company in Hellertown, Pennsylvania. (ECF No. 1, ¶ 13). Estes transported the shipment from Cincinnati to the Terminal on February 19, 2021, where it arrived in the early morning hours of February 20, 2021. (*Id.* ¶ 23). Four days later, while awaiting transport towards the shipment's final destination, Estes personnel discovered mercury leaking from the shipment. (*Id.* ¶¶ 24-29).

A. **Estes I**[1]

Estes commenced *Estes I* on May 7, 2021. (ECF No. 1). In its amended complaint ("Amended Complaint"), Estes asserted four claims against Cleanlites: Negligence (Count I); Common Law Strict Liability (Count II); Strict Liability Pursuant to 42 U.S.C. § 9601 *et seq.* (CERCLA) (Count III); Strict Liability Pursuant to 35 P.S. § 6020.101 *et seq* (Count IV). (ECF No. 36). Cleanlites moved to dismiss Counts II, III, and IV of the Amended Complaint. (ECF No. 42). The Court subsequently dismissed Count II with prejudice but allowed Counts III and IV to proceed to discovery. (ECF Nos. 64, 65).

Eight days after the Court's April 20, 2023 order on Cleanlites's Motion to Dismiss, Cleanlites filed a motion for discovery, asking the Court to preclude Estes from damages that it failed to disclose. (ECF No. 66). Fact discovery closed on January 20, 2023. (*Id.* at 2). On April 6, 2023, Estes served Cleanlites with two expert reports, one of which claimed that Estes would

---

[1] All ECF citations in this section are to Civil Action No. 2:21-cv-609-WSS.

incur future remedial damages within the range of $8-$14 million. (*Id.*). Prior to this report, Estes had only disclosed damages totaling $552,563.31. (*Id.* at 3).

On June 1, 2023, the Court granted Cleanlites's motion for discovery, excluding damages sought of approximately $11 million. (ECF Nos. 79, 80). Later that month, on June 30, 2023, Cleanlites moved for summary judgment. (ECF No. 81). The Court denied summary judgment on September 13, 2023 and scheduled a jury trial to begin on March 18, 2024. (ECF Nos. 89, 90).

### B. Estes II

On July 6, 2023, one month after the Court's order granting Cleanlites's motion for discovery in *Estes I*, Estes filed its Complaint commencing *Estes II*. (ECF No. 1). Estes pleads two counts in its Complaint—Count I is for recovery of response costs and Count II is for declaratory judgment. (*Id.*). Both claims are alleged under CERCLA. (*Id.*). Cleanlites then filed its motion to dismiss, seeking to dismiss Estes's entire Complaint. (ECF No. 6).

## II. STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III. ANALYSIS

Cleanlites argues that the Court should dismiss Estes's Complaint in its entirety because Estes's second filing represents impermissible claim-splitting. (ECF No. 8, p. 2-3). Cleanlites contends that by Estes filing this second lawsuit, it seeks to circumvent the Court's previous order granting Cleanlites's motion for discovery (Civil Action No. 2:21-cv-609, ECF No. 80), which precluded Estes from seeking approximately $11 million in damages. (ECF No. 8, p. 3).

Estes responds that it initiated this suit in accordance with the plain and clear language of CERCLA. (ECF No. 10, p. 3-4). Such language, Estes contends, allows for the "multiplicity of suits arising out of the same hazardous materials environmental exposure event" in order to recover response costs arising from the incident. (*Id.*). Cleanlites asserts that CERCLA cannot be "the Achilles heel to the long-standing precedent of *res judicata*." (ECF No. 12, p. 5). Under the theory of *res judicata*, Cleanlites argues that Estes "has already raised all associated past, current, and

future damages" in the first suit and fails to present any other distinct future costs in this suit. (*Id.* at 3).

### A. Claim-Splitting

The general prohibition on claim-splitting, as a facet of *res judicata*, is a long-standing doctrine in our legal system.[2] The principle prohibits plaintiffs from "maintain[ing] two separate [concurrent] actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (citing *United States v. Haytian Republic*, 154 U.S. 118, 123-24 (1894)). Further, it ensures that plaintiffs cannot present piecemeal litigation and must instead present all claims arising out of a single alleged wrong in one action before the court. *Prewitt v. Walgreens Co.*, Civil Action No. 12-6967, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013). As such, plaintiffs are precluded from not only filing duplicative suits but also from circumventing a court's prior rulings. (*Id.*).

The doctrine "applies when two cases: (1) take place in the same court; (2) with the same defendants; (3) involving the same subject matter." *McKenna v. City of Phila.*, 304 F. App'x 89, 92 (3d Cir. 2008); *Walton*, 563 F.2d at 70. The two cases need not be identical, rather, they need only rely on "the same operative facts and legal principles." *McKenna*, 304 F. App'x at 92.

A district court presented with a plaintiff's attempt to split claims has the option to stay the second proceeding, dismiss the second filing without prejudice, or consolidate it with the initial

---

[2] "It is undoubtedly a settled principle that a party seeking to enforce a claim, legal or equitable, must present to the court, either by pleadings or proofs, or both, all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand and prosecute it piecemeal, or present only a portion of the grounds upon which specific relief is sought, and leave the rest to be presented in a second suit, if the first fail[s]." *Stark v. Starr*, 94 U.S. 477, 485 (1876); *see also Urquhart v. Am. Dyewood Co.*, 78 F.2d 866 (3d Cir. 1935) (holding that the district court did not err in refusing to allow appellant to split his cause of action for the same contract and breach thereof against the same parties requesting the same damages).

suit. *Walton*, 563 F.2d at 70-71. A court's consideration turns on whether the second complaint presents anything new. *Walton*, 563 F.2d at 71. If the second complaint "proves to contain nothing new, consolidation of the two actions will cause no harm provided that the district court carefully insures that the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights [it] would have otherwise enjoyed." (*Id.*).

The parties do not dispute that, under these principles, Estes's second lawsuit would likely qualify as claim-splitting. (ECF No. 8, pp. 6-8; ECF No. 10, pp. 3-5). This action takes place in the same court as Civil Action No. 2:21-cv-609-WSS, against the same defendants (Cleanlites), and involves the same subject matter (the mercury spill at the Terminal). *See McKenna*, 304 F. App'x at 92; *Walton*, 563 F.2d at 70. Estes and Cleanlites instead disagree on whether CERCLA provides an exemption from this doctrine that gives plaintiffs an opportunity to assert and recover additional response costs in subsequent suits. (ECF No. 10, pp. 3-5; ECF No. 12, pp. 2-5).

**B. CERCLA**

"Numerous courts have complained about the inartful, confusing, and ambiguous language and the absence of useful legislative history [of CERCLA]." *United States v. Rohm & Haas Co.*, 2 F.3d 1265, 1270 n.6 (3d Cir. 1993), *overruled on other grounds*, *United States v. E.I. DuPont de Nemours & Co.*, 432 F.3d 161 (3d Cir. 2005) (*en banc*). CERCLA is certainly "not the Mona Lisa of statutes" and is instead "notorious for its lack of clarity and poor draftsmanship." *Giovanni v. United States Dep't of Navy*, 906 F.3d 94, 117 (3d Cir. 2018); *Lansford-Coaldale Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1221 (3d Cir. 1993).

The statute provides two mechanisms for potentially responsible parties ("PRPs")[3] to recover costs associated with decontaminating a polluted site: (1) § 9607(a) cost recovery claims and (2) § 9613(f) contribution.[4] *Agere Sys., Inc. v. Advanced Env'l Tech. Corp.*, 602 F.3d 204, 216-17 (3d Cir. 2010). These sections complement each other but provide distinct causes of action "to persons in different procedural circumstances." *E.I. DuPont de Nemours & Co. v. United States*, 508 F.3d 126, 134 (3d Cir. 2007) (citations omitted). "Section [96]13(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § [96]06 or § [96]07(a). And § [96]07(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs." *Beazer E., Inc. v. Mead Corp.*, 525 F.3d 255, 260 (3d Cir. 2008) (quoting *U.S. v. Atl. Rsch.*, 551 U.S. 128, 139 (2007)).

These two causes of action also provide for distinct allocations of liability and remedies. Section 9607(a)(4)(B) imposes strict liability on a PRP for "any . . . necessary costs of response incurred by any other person" under a joint and several liability theory, whereas § [96]13 permits contribution from other PRPs following a CERCLA suit. *New Jersey Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, 974 F.3d 486, 489 (3d Cir. 2020); *Trinity Indus., Inc. v. Greenlease Holding*

---

[3] The parties do not dispute that they are each a PRP as defined by 42 U.S.C. § 9607(a). A PRP includes: (a) the current owner or operator of a facility; (b) any person who owned or operated the facility at the time of the disposal of a hazardous substance; (c) any person who arranged for disposal or treatment or arranged for transport for disposal or treatment of hazardous substances at a facility; and (d) any person who accepts or accepted hazardous substances for transport to sites selected by such person. *New Castle Cnty. v. Halliburton NUS Corp.*, 111 F.3d 1116, 1120 n.2 (citing 42 U.S.C. § 9607(a)(1)-(4)). Both of Estes's complaints plausibly allege that it is a transporter under § 9607(a)(4) and that Cleanlites is an arranger according to § 9607(a)(3). (*See* Civil Action No. 2:21-cv-609-WSS, ECF No. 36, ¶¶ 8, 18, 24, 57-59; Civil Action No. 2:23-cv-01228-WSS, ECF No. 1, ¶¶ 11-13, 19, 52-53.)

[4] Throughout case law, citing to either § 107 or § 113 as opposed to the provision's statutory counterpart (§ 9607 or § 9613, respectively) is indistinguishable and the differing section numbers are often used interchangeably. For ease of discussion, the Court will use the statutory citation.

*Co.*, 903 F.3d 333, 348 (3d Cir. 2018). Additionally, for § 9607(a) actions, § 9613(g)(2) directs that the Court "shall" enter a declaratory judgment regarding the liability for response costs or damages, which will then have a binding effect on a subsequent action for cost recovery. *Action Mfg. Co. v. Simon Wrecking Co.*, 287 F. App'x 171, 175 (3d Cir. 2008) (stating that "CERCLA § [96]13(g)(2) requires declaratory judgments for cost recovery actions").

In *Estes I*, Estes pled a claim for "Strict Liability Pursuant to 42 U.S.C. 9601 *et seq.*" at Count III and requested "all damages available under [CERCLA]." (Civil Action No. 2:21-cv-609-WSS, ECF No. 36, ¶ 59). The Court previously denied Cleanlites's motion to dismiss Count III of the *Estes I* Amended Complaint, finding that Estes had "met its burden of pleading a plausible claim against Cleanlites under CERCLA." (Civil Action No. 2:21-cv-609-WSS, ECF No. 64, pp. 11-13). Since Estes sought to hold Cleanlites strictly liable under CERCLA, the Court treats this claim as one for cost recovery.[5]

### C. Cleanlites's Motion as to Count I of the Complaint is denied because CERCLA authorizes successive actions, and Estes plausibly alleges a subsequent cost recovery claim under the statute.

In its Complaint, Estes seeks recovery of both incurred and anticipated response costs at Count I. (ECF No. 1, ¶¶ 50-60). Cleanlites argues that Estes's second suit does not allege any distinct further response costs and that Estes is asserting the same harm and damages as it did in *Estes I*. (ECF No. 12, pp. 3-4). In order to determine whether to grant Cleanlites's Motion, the Court must first consider whether Estes's second suit demonstrates impermissible claim-splitting or is, rather, permitted under CERCLA's language. If CERCLA authorizes such additional

---

[5] The Court notes that Count III did not specifically cite to the cost recovery provision of § 9607. Nevertheless, the Court looks to the substance of the claim and notes that its assertion that Cleanlites is strictly liable for cleanup costs was sufficient to assert a plausible § 9607 cost recovery claim.

8

actions, the Court must then consider whether Estes has plausibly alleged a cost recovery claim under § 9607.

Estes asserts that § 9613(g)(2) permits it to file this second lawsuit. (ECF No. 10, pp. 3-4). The relevant language states:

> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

42 U.S.C. § 9613(g)(2)(B). Accordingly, a subsequent action for further response costs must be one brought against the same party or parties against which an initial cost recovery action has been maintained. *Agere Sys., Inc.*, 602 F.3d at 221 n.28 (citation omitted). Estes has done this. Estes asserts its Count I claim against Cleanlites, the same party that Estes brought its initial cost recovery action against at Count III of *Estes I*, pursuant to § 9613(g)(2)(B).

Next, the Court considers whether Estes plausibly alleges a claim for cost recovery in its Complaint. The elements to make out a prima facie case for cost recovery and contribution are essentially the same. *N.J. Tpk. Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 104 (3d Cir. 1999). A plaintiff must show: (1) that the defendant is one of four categories of PRPs; (2) that there was a release or a threatened release of the hazardous substances from the facility into the environment; (3) that the release or threatened release caused plaintiff to incur response costs; and (4) that the plaintiff's costs were "necessary costs of response . . . consistent with the national contingency plan." *Champion Lab'ys, Inc. v. Metex Corp.*, Civ. No. 02-5284, 2009 WL 2496888, at *23 (D.N.J. Aug. 13, 2009) (citations omitted). As discussed above, the first two elements are not at issue here

because there is no dispute that the parties are PRPs and that a mercury spill occurred at the Terminal.

The Court's analysis turns on whether Estes sufficiently pleads that it incurred costs that are recoverable under CERCLA. In order to be recoverable, response costs must be: (1) necessary and consistent with the national contingency plan; (2) incurred by the party seeking recovery; and (3) incurred before the lawsuit. *See U.S. V.I. Dep't of Plan. & Nat. Res. v. St. Croix Renaissance Grp.*, 527 F. App'x 212, 214 (3d Cir. 2013). It is an essential aspect of a § 9607 claim that the response costs a party seeks to recover be already incurred. *F.P. Woll & Co. v. Fifth and Mitchell St., Corp.*, Civil Action No. 96-5973, 2006 WL 2381778, at *7 (E.D. Pa. Aug. 16, 2006) ("[T]he plain language of [§ 9607] only allows for recovery of costs that have been 'incurred.'"). Thus, when "faced with cost estimates that are best classified as speculative," a court will not allow "plaintiffs to recover lump sum payments of costs that they have not incurred and may never incur . . . ." (*Id.*).

While the vast majority of Estes's Count I claim in *Estes II* mirrors its Count III claim in *Estes I*, Estes additionally alleges in its Complaint that it "has incurred response costs to develop a plan [to] remediate the hazardous substance, and will in the future incur response costs in remediating the site." (ECF No. 1, ¶ 54). Estes pleads that it has incurred $5,273.93 "for the development of a remedial action plan consistent with the National Contingency Plan." (ECF No. 1, ¶ 45). Estes did not allege that it incurred this response cost in its initial § 9607 claim in *Estes I*, and thus the expense was incurred after the allegations made in *Estes I* but prior to the initiation of *Estes II*. Therefore, Estes's Count I may proceed but only as to the costs alleged to have been

incurred, which in viewing the Complaint is $5,273.93. The claim cannot, however, survive as it relates to conjectural future costs.[6] *See F.P. Woll & Co.*, 2006 WL 2381778, at *7.

Since § 9613(g)(2) authorizes subsequent § 9607 actions during the initial response action, the Court will deny Cleanlites's Motion as to Count I because Estes seeks to recover response costs that it incurred prior to filing this subsequent action. Nevertheless, the Count I assertion pertaining to recovery of future costs is dismissed because such an award for uncertain future expenses goes beyond the objective of § 9607 claims.

### D. Count II of the Complaint is dismissed because it is barred under the doctrine of issue preclusion.

At Count II, Estes requests declaratory judgment, asking the Court to declare that Cleanlites would continue to be liable for response costs incurred related to remedial action at the Terminal. (ECF No. 1, ¶¶ 50-60). The Court grants Cleanlites's Motion as to Count II because Estes cannot seek declaratory relief in this second action when a declaration assigning liability will be entered at the conclusion of *Estes I* pursuant to the language of § 9613(g)(2)(B).

As discussed previously, in deciding Estes's § 9607(a) cost recovery claim in *Estes I*, the Court "shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2); *Action Mfg. Co. v. Simon Wrecking Co.*, 287 F. App'x 171, 175 (3d Cir. 2008). Given this, the Court will enter declaratory judgment at the conclusion of *Estes I* based on factual findings of liability. For the Court to again address the issue of liability and enter declaratory relief accordingly would be duplicative and barred under the principle of issue

---

[6] It is not lost on the Court that the recoverability of the proposed speculative future costs looms large in light of the Court's *Estes I* Order precluding $11 million in damages. (*See* Civil Action No. 2:21-cv-609-WSS, ECF Nos. 79, 80). But, such costs are yet to be incurred and thus are not recoverable through a § 9607 action at this time.

11

preclusion. *See Burlington N. R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995). Therefore, the Court grants Cleanlites's Motion as to Count II of the Complaint. Count II will be dismissed.

### IV.   CASE MANAGEMENT

The Court has broad discretion to stay proceedings. *See Bechtel Corp. v. Local 215 Laborer's Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976). This power "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Commonwealth Ins. Co. v. Underwriters, Inc.*, 846 F.2d 196, 199 (3d Cir. 1988). It is within this discretionary power that a court "may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp.*, 544 F.2d at 1215. A district court must therefore exercise its judgment by both weighing competing interests and maintaining an even balance. *Landis*, 299 U.S. at 254-55; *Cheyney State Coll. Fac. v. Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983). In taking the competing interests of the parties into account, district court have considered the following factors in determining whether to exercise their power to stay proceedings: (1) the length of the stay; (2) the balance of harm to the parties; and (3) whether a stay will simplify issues and promote judicial efficiency. *U.S. ex. Rel. FLFMC, LLC v. Williams Bounds, LTD.*, Civil Action No. 10-0420, 2010 WL 2990725, at *2 (W.D. Pa. July 28, 2010).

Despite § 9613(g)(2)'s authorization for subsequent cost recovery actions to be brought while the initial action is pending, the provision does not provide guidance as to how a court should navigate this scenario. Nevertheless, Estes's ability to prevail on this subsequent action is contingent upon the allocation of liability in *Estes I*, such that Estes cannot seek further recovery

of response costs from Cleanlites if Cleanlites is not adjudicated liable for any part of the mercury spill in *Estes I*. The declaratory judgment that the Court will enter with respect to liability in *Estes I* will direct whether Estes's second suit may proceed or be dismissed. Thus, the resolution of *Estes I* will simplify the liability issues in the *Estes II* proceedings and promote overall judicial efficiency. *U.S. ex. Rel. FLFMC, LLC*, 2010 WL 2990725, at *2.

Additionally, a stay of Estes's Count I claim will not be unduly prejudicial to the parties. The stay will remain in place until the assignment of liability is adjudicated in *Estes I*. Given that the jury trial is to begin on March 18, 2024, the parties will not be waiting for some unknown amount of time for a decision. Further, there is no evident harm to either of the parties. All discovery in *Estes I*, both fact and expert, has been closed for months (fact discovery closed on January 20, 2023, (ECF No. 66), and all expert reports and supplemental reports had to be submitted by June 2, 2023, (ECF No. 56)). The parties are now preparing for trial, and it is impracticable to compound such preparation with discovery for *Estes II*.[7] Therefore, it is in the interest of judicial efficiency, with no prejudice to the parties here, that the Court stay *Estes II* until a judgment is rendered in *Estes I*.

---

[7] The Court recognizes that because Estes can only pursue damages for costs that it has already incurred, the value of this case is limited. As such, if the parties agree to forego the ordinary discovery process, the Court is willing (again, upon agreement) to consolidate the discrete claim presented in this case with the issues to be presented to the jury in *Estes I*. If, after meeting and conferring, the parties agree with this approach, the Court will conduct a status conference to discuss a path forward.

### V.     CONCLUSION

Defendant Cleanlites's motion to dismiss will be granted as to Count II and denied as to Count I.  Count I will be stayed pending the resolution of *Estes I*.  An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_10-19-23_____
Dated